Andrea L. Richard (5-2848)
THE RICHARD LAW FIRM, P.C.
P.O. Box 1245
290 E. Broadway
Jackson, Wyoming 83001
Office: 307.732.6680
Fax: 307.200.4280
andrea@arichardlaw.com
*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **MIA MURDOCK,** an individual; and | |
| **M3 INC.**, a Wyoming for profit corporation; | |
| Plaintiffs, | |
| v. | CASE NO. _____ |
| **FBL FINANCIAL GROUP, INC.**, a Wyoming for profit corporation; | |
| **FBL FUNDING, INC.,** a Wyoming for profit corporation; | **FIRST AMENDED COMPLAINT** |
| **MOUNTAIN WEST FARM BUREAU MUTUAL INSURANCE COMPANY**, a Wyoming for profit corporation; | **AND** **DEMAND FOR JURY TRIAL** |
| **WESTERN FARM BUREAU SERVICE COMPANY, INC.**, a Wyoming for profit corporation; | |
| **FARM BUREAU LIFE INSURANCE COMPANY**, an Iowa for profit corporation; | |
| **FBL MARKETING SERVICES, LLC**, an Iowa limited liability company; | |
| **LEONARD TODD SEETON**, individually and in his capacity as Mountain West Farm Bureau Mutual Insurance Company Agency Manager, Farm Bureau Financial Services | |

| | |
|---|---|
| Financial Advisor, FBL Marketing Services Registered Representative, FBL Wealth Management Advisor, and Farm Bureau Life Insurance Company Representative; and<br><br>**J. DOES 1-10**<br><br>    Defendants. | |

COME NOW Plaintiffs, Mia Murdock and M3 Inc., (hereinafter "Ms. Murdock" or "Plaintiffs"), by and through their undersigned Counsel, and for their *First Amended Complaint*, hereby state and allege as follows:

1.    Defendants FBL Financial Group, Inc., FBL Funding, Inc., Mountain West Farm Bureau Mutual Insurance Company, Western Farm Bureau Service Company, Farm Bureau Life Insurance Company, FBL Marketing Services, LLC, Leonard Todd Seeton and as-yet-named J. Does 1 - 10 are sometimes collectively referred to herein as "Farm Bureau" and "Defendants".

## NATURE OF ACTION – OVERVIEW

2.    On October 4, 2019, Ms. Mia Murdock is dismissed from her position as an agent selling insurance with Mountain West Farm Bureau Insurance Company (MWFB).

3.    Prior to this, Mr. Seeton has become increasingly frustrated that Ms. Murdock has greater substantive knowledge and experience.  When Ms. Murdock asks Mr. Seeton about a problem that has arisen, he becomes angry telling her "I am the agency manger!! Not you!!"  Mr. Seeton is becoming threatened at the prospect of appearing to be out performed by Ms. Murdock because of her gender.  His behavior demonstrates that he is threatened as does the excuse he suggests for terminating Ms. Murdock.

4.     MWFB Agency Manager, L. Todd Seeton, claims that Ms. Murdock is dismissed because she has formed Mosaic Planning Group, LLC, in violation of her contract with MWFB, and that he has heard that Ms. Murdock intends to leave MWFB.

5.     When Ms. Murdock points out to Mr. Seeton that she has approval from Farm Bureau for her LLC (which she had not begun operating), and she does not have any appointments with other companies outside of Farm Bureau and its affiliates, Mr. Seeton changes the reason for her dismissal to the activities of Ms. Murdock's business associate, Ms. Heather Stiefvater.  Mr. Seeton fails to recognize that Ms. Stiefvater also works for Farm Bureau and has had the same outside appointments from when she was first hired by Farm Bureau in 2015.

6.     Thus, both Ms. Murdock and Ms. Stiefvater both have approved and recognized outside businesses that cannot legitimately be used as a basis to terminate Ms. Murdock, yet Mr. Seeton does so.

7.     After her termination, Ms. Murdock launches her business, Mosaic Planning Group, LLC, so that she can earn income and support her family.

8.     After Ms. Murdock's termination, Mr. Seeton and other representatives of Farm Bureau initiate a campaign to defame and damage Ms. Murdock personally, and her family, and to interfere with and disrupt Ms. Murdock's profession and ability to do business.  Defendants' actions are intentional and directed toward making it difficult for Ms. Murdock to earn a living in her profession as an insurance or securities agent at this time or in the future.

9.     Ms. Murdock has been involved in the insurance and securities industry for most of her adult life.  She has been employed by or working with Defendant Farm Bureau entities since 2007.

10.     Ms. Murdock has endured hostile work environments and sexual harassment as a result of working for and with Defendants.

11.     Ms. Murdock has been prevented from advancement despite superior performance at her job and has been forced to move from advanced positions to lesser ones in order to escape hostile work environments, sexual harassment, and gender discrimination.

12.     Unfortunately, wherever Ms. Murdock moved within the Defendant entities, she could find no place that provided a workplace free from discrimination and harassment.

13.     Upon information and belief, Ms. Murdock was dismissed from her position as an agent for MWFB because her superior performance threatened Mr. Seeton, the agency manager.

14.     Ms. Murdock has been defamed and pursued by Defendants attempting to ensure she does not or cannot compete with them in the insurance or securities industries; they have attempted to squelch Ms. Murdock and prevent her from engaging in good and common market competition against them.

## PARTIES, JURISDICTION AND VENUE

15.     Plaintiff, Ms. Mia Murdock, is a resident of the state of Wyoming, Teton County, and has been a resident of Teton County, Wyoming at all times relevant hereto.

16.     Plaintiff, M3 Inc., is a for profit corporation registered in the state of Wyoming, Filing ID 2015-000691014.  Its principal office is 9625 S. US Hwy 89, Jackson, Wyoming 83001.  This entity was formed by Ms. Murdock, at the direction of Farm Bureau, as the depository for commission payments.

17.     Defendant FBL Financial Group, Inc., is a for profit foreign corporation registered in the state of Wyoming, Filing ID 1996-000311252.  Its principal office is 5400 University

Avenue, West Des Moines, IA 50266.  Defendant at all times relevant herein was registered and authorized to conduct business in Wyoming.

18.     Defendant FBL Funding, Inc. is a for profit foreign corporation registered in the state of Wyoming, Filing ID 2016-000732047.  Its principal office is 5400 University Avenue, West Des Moines, IA 50266.  Defendant at all times relevant herein was registered and authorized to conduct business in Wyoming.

19.     Defendant Mountain West Farm Bureau Mutual Insurance Company is a for profit corporation registered in the state of Wyoming, Filing ID 1980-000071555.  Its principal address is P.O. Box 1348, Laramie, Wyoming 82073.  Defendant at all times relevant herein was registered and authorized to conduct business in Wyoming.

20.     Defendant Western Farm Bureau Service Company, Inc., is a for profit corporation registered in the state of Wyoming, Filing ID 1980-000089760.  Its principal address is 931 Boulder Dr., Laramie, Wyoming 82070.  Defendant at all times relevant herein was registered and authorized to conduct business in Wyoming.

21.     Defendant Farm Bureau Life Insurance Company is a for profit corporation registered in the state of Iowa, Business No. 69700.  Its home office is at 5400 University Ave., West Des Moines, Iowa 50266.

22.     Defendant FBL Marketing Services, LLC, is a limited liability company registered in the state of Iowa, Business No. 440686.  Its home office is at 5400 University Ave., West Des Moines, Iowa 50266.

23.     Defendant Leonard Todd Seeton, is an individual and also a party in his individual capacity as Mountain West Farm Bureau Mutual Insurance Company Agency Manager, Farm Bureau Financial Services Financial Advisor, FBL Marketing Services

Registered Representative, FBL Wealth Management Advisor, and Farm Bureau Life Insurance Company Representative.

24.     Defendant J. Does 1 – 10 may include unknown entities or actors and may be entities that are a receiver of goods, services, equipment, assets and other resources from the other Defendants or entities controlled by the Defendants, that may be relevant in this action.

25.     Plaintiffs are unable to determine the actual names and capacities of Defendants J. Does 1 - 10, inclusive, and therefore sues these Defendants by such fictitious names.  On information and belief, each of the J. Doe Defendants may be liable for the causes of action set forth below or may be used to house or hide assets that should properly be available to pay the obligations and damages described herein.  Plaintiffs reserve the right to amend this *First Amended Complaint*, and when the identities of the J. Doe Defendants have been ascertained and/or their operations and assets discovered, Plaintiffs will seek leave to amend this *First Amended Complaint* to set forth their actual names and capacities.

26.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 16(c) and Section 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217, to enforce the requirements of the Equal Pay Act of 1963, codified as Section 6(d) of the FLSA, 29 U.S.C. § 206(d), and pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

27.     Defendants employ more than 50 employees and are employers within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq. (sometimes referred to as "Title VII").

28.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this cases arises under federal law, specifically Title VII, the Due Process Clause of the 14th Amendment to the United States Constitution and 42 U.S.C. § 1983.

29.     Venue is proper in the District of Wyoming pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because Defendants' unlawful actions, including Defendants' unlawful retaliation, giving rise to Plaintiffs' claims occurred in this District.

30.     This Court has pendant jurisdiction over the state law claims contained herein.

31.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Wyoming.

## ADMINISTRATIVE PROCEDURES

32.     More than thirty (30) days prior to the institution of this lawsuit, Ms. Murdock filed a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and the Wyoming Department of Workforce Services (DWFS), Fair Labor Standards, alleging violations of the Wyoming Fair Employment Practices Act, Wyo. Stat. § 27-9-101, et. seq., Title VII and related discrimination by the Defendants.

33.     The DWFS provided the Defendants with notice of the charge.

34.     Over one hundred eighty days after Plaintiff Murdock filed her charge, the U.S. Equal Employment Opportunity Commission in connection with the Wyoming Department of Workforce Services, issued a right to sue notice authorizing this lawsuit, a true and correct copy of which is attached hereto as Exhibit 1 and incorporated by this reference.

## BACKGROUND FACTS

35.     In September of 2007 Ms. Murdock began working as an agent for Farm Bureau Financial Services and a Farm Bureau affiliate, West River Agency, in South Dakota. Ms. Murdock was assigned to work with and be supervised by Mr. Monte McQuigg, the agency manager for Farm Bureau. The harassment, hostile work environment, and discrimination Ms. Murdock has been subjected to by Farm Bureau and its representatives began at this point and has culminated in the defamation Defendants have now directed towards her.

36.     Mr. McQuigg, Farm Bureau's representative, repeatedly made suggestive and sexually harassing comments to Ms. Murdock.

37.     At one point, Ms. Murdock was assigned to drive with Mr. McQuigg from Rapid City, South Dakota to Sturgis, South Dakota. Mr. McQuigg required that Ms. Murdock ride with him in his vehicle. During the drive, Mr. McQuigg made several sexually suggestive comments to Ms. Murdock. Ms. Murdock responded by plainly and clearly informing Mr. McQuigg that she was not interested and was uncomfortable. Rather than ceasing his inappropriate and harassing behavior, Mr. McQuigg repeatedly ignored Ms. Murdock's rejections and took advantage of the fact that Ms. Murdock was confined to his vehicle to continue to harass her. At one point, Mr. McQuigg physically assaulted Ms. Murdock. Ms. Murdock told him to stop his conduct and reiterated that his advances were unwelcome.

38.     Farm Bureau failed to provide Ms. Murdock with any way of reporting this incident or seeking help. As a result, the assault and harassment of Ms. Murdock by her supervisor and Farm Bureau's representative went unaddressed.

39.     Ms. Murdock, having to deal with the horrible situation alone, moved her Farm Bureau business from Rapid City to Hot Springs, SD, in order to limit the amount of contact she had with Mr. McQuigg.

40.     In approximately June, 2011, Ms. Murdock was offered a job in Grand Island, NE, as an Agency Manager for Farm Bureau and she moved into that job in July of 2011.

41.     During her time as Agency Manager, Ms. Murdock witnessed incidents of sexual harassment, but there were no policies prohibiting such behavior and no procedures established for discipline or reporting.

42.     In approximately January of 2013, Ms. Murdock was promoted to Regional Vice President for Farm Bureau in Nebraska.  As an employee, Ms. Murdock's salary and commissions were paid by FBL Financial Group, Inc. and Farm Bureau Property & Casualty Insurance Company.

43.     Here too, Ms. Murdock witnessed sexual harassment of other women at Farm Bureau.  Ms. Murdock was frustrated; she felt she had a duty to report the sexual harassment she witnessed; however, Farm Bureau still had no policies or procedures in place to do so.

44.     Around March of 2013, Ms. Murdock attended an "All Stars" dinner party where she and others were celebrated for their excellent performance at Farm Bureau.

45.     While at the "All Stars" dinner, Ms. Murdock witnessed Mr. Don Snyder, a representative of Farm Bureau with a history of becoming inebriated and harassing women, slap another female agent on the rear.  This female agent was an agency manager who reported to Ms. Murdock in the Farm Bureau hierarchy.

46.     Mr. Snyder then proceeded to approach Ms. Murdock herself, place his hand over her mouth, and kiss the back of his hand in a kind of "stage kiss" to which Ms. Murdock did not consent and which made her and her husband, who was next to her, uncomfortable.

47.     Ms. Murdock reported the incidents at the "All Stars" dinner to her supervisor in Nebraska, Mr. Cy Winters, who she believed would take the matter seriously despite Farm Bureau not having any reporting mechanism or preventative structure for sexual harassment and assault.  Mr. Winters contacted Mr. Paul Swinton, Farm Bureau's corporate counsel, to address the matter.

48.     While Mr. Winters and Mr. Swinton appeared to take Ms. Murdock's allegations seriously, they mishandled the situation entirely and demonstrated the complete lack of awareness that Farm Bureau has regarding sexual harassment and assault.  Specifically, when weather prevented Mr. Winters and Mr. Swinton from meeting with Mr. Snyder in person to discuss his actions, they required Ms. Murdock to meet with him alone while they called into the meeting.  Mr. Swinton then proceeded to inform Mr. Snyder, while he was still with Ms. Murdock, that she was the one who reported him.  Although Mr. Winters and Mr. Swinton's actions were well-meaning, they clearly had no understanding of how to handle a case of sexual harassment and assault and had no regard for how such a meeting with Mr. Snyder would affect Ms. Murdock, who was understandably uncomfortable and afraid.

49.     The uninformed and appropriate approach by Mr. Winter and Mr. Swinton demonstrates that Farm Bureau never did and continues not to take allegations of sexual harassment and assault seriously and neglects to train their representatives on how to prevent and address such situations.

50.     Despite the mishandling of her report, Ms. Murdock needed her job as Regional Vice President and thus remained at Farm Bureau.  Unfortunately, she continued to face discrimination and harassment while there, and in addition, retaliation for her reporting of the sexual harassment at the All Stars dinner.

51.     In approximately May of 2013, Mr. Scott Stice was hired by Farm Bureau to supervise Mr. Cy Winters and those reporting to him.  Mr. Stice adjusted the existing hierarchy by removing Mr. Winters from direct supervision of eight Regional Vice Presidents in multiple states and requiring all Regional Vice Presidents to report directly to Mr. Stice.

52.     Mr. Stice then proceeded, as a supervisor, and in his capacity as a representative of Farm Bureau, to harass, discriminate, and retaliate against Ms. Murdock on multiple occasions.

53.     Despite the outstanding performance of the agents under Ms. Murdock's supervision, Mr. Stice would say to her that "he needs a throat to choke" and would ask Ms. Murdock "who do I have to shoot to get this done?"

54.     Mr. Stice consistently berated and verbally attacked Ms. Murdock.  Given that she and her team were performing well, and that Ms. Murdock was both the youngest Regional Vice President and the first and only female, it is clear that Mr. Stice's actions were motivated by his prejudice against Ms. Murdock because of her gender, not by any need to improve her job performance.

55.     Mr. Stice additionally treated Ms. Murdock differently because she is a mother. At one point, he singled her out and shamed her for her family responsibilities, saying "some of us don't have those family obligations."

56.     Furthermore, Mr. Stice criticized Ms. Murdock for not acting like the other male Regional Vice Presidents, shaming and bulling her because she was uncomfortable playing golf with them, and therefore declined to do so.  Mr. Stice deliberately isolated her from the other Regional Vice Presidents and Farm Bureau agents for this and acted to prevent her from developing a professional relationship with them.

57.     Mr. Stice ridiculed Ms. Murdock to her face and to others at Farm Bureau.  He even went so far as to sabotage her professional advancement, noting that it is "ridiculous" to include a woman in a conversation about promotions or job assignments.

58.     By this time, Ms. Murdock is getting physically ill before any planned interaction with Mr. Stice, particularly scheduled quarterly review meetings.  These meetings are held in the home office in West Des Moines and Mr. Stice regularly brow beats Ms. Murdock in front of her peers.

59.     Mr. Stice continues with his sexist and discriminatory conduct when he tells Ms. Murdock, who had hosted a Women in Business dinner for female Farm Bureau agents to build the camaraderie and support that Farm Bureau neglected to provide, that "she should not have a dinner like that again."

60.     In approximately May of 2014, Ms. Murdock contacts Farm Bureau HR to report the hostile and discriminatory working conditions.  Shortly after, Mr. Stice arranges to visit Ms. Murdock and the agents in the area.  Mr. Stice requires Ms. Murdock to spend two days in a car with him, touring the area.  Ms. Murdock clearly feels that Mr. Stice knows about her report to HR and is attempting to intimidate her and retaliate against her for her reporting.

61.     When Ms. Murdock calls Mr. Swinton seeking support and advice for dealing with the hostile work environment, Mr. Swinton says "Scott is a good boss.  He is trying to get

the job done and bringing everyone up to the level needed to do that." Thus, Mr. Swinton makes clear that Ms. Murdock is not going to receive help from him.

62.     Ms. Murdock decides she needs to move away from Mr. Stice for the sake of her health and her personal relationships. Ms. Murdock was born and raised in Wyoming and she decides to look at opportunities in Wyoming.

63.     Ms. Murdock reaches out to members of the leadership team at Mountain West Farm Bureau to discuss options. She is told they will not discuss such a move with her until she has discussed the move with Mr. Stice, and he gives his approval for the move.

64.     In approximately the first week of June, 2014, Ms. Murdock discusses moving to MWFB with Mr. Stice on the phone. He gives his approval.

65.     A few days later, Mr. Stice calls Ms. Murdock and proposes to move her into a different, temporary position in West Des Moines, Iowa. The position is temporary, and Ms. Murdock is concerned about moving her family to West Des Moines for it, and it is three hours away from her current home. Ms. Murdock lets Mr. Stice know that she needs to discuss the proposal with her husband.

66.     Two days later, Mr. Stice calls Ms. Murdock, retracts the offer for the temporary position, and terminates her from her employment stating "I need someone who is dedicated to Nebraska."

67.     Ms. Murdock is convinced Mr. Stice's actions are motivated by gender discrimination and that he is working to eliminate the only female Regional Vice President Farm Bureau has. Why else would he initially approve her move to Wyoming, then offer her a position in Iowa, and then terminate her because she was not "dedicated to Nebraska."

68.    Ms. Murdock asks Mr. Stice if he is terminating her because she is a woman.  He replies by first asking her if she is recording the conversation and then says "That is ridiculous. This conversation is over."

69.    Subsequent to her termination, Ms. Murdock is able to find a position with MWFB in Teton County, Wyoming, albeit as an insurance agent.  Ms. Murdock is effectively demoted from regional management to local agent despite her performance as a Regional Vice President and as a clear result of Mr. Stice's and Farm Bureau's discriminatory behavior.

70.    On September 1, 2014, Ms. Murdock begins working for Farm Bureau as an agent in Teton County.  She is a successful agent at Mountain West Farm Bureau Mutual Insurance Co. and consistently achieves top sales of insurance and securities products on a yearly basis. However, the discrimination perpetrated and condoned by Farm Bureau, its culture and practices, and its representatives continues.

71.    Mr. Todd Seeton is the agency manager for Farm Bureau in Teton County, and his prejudice against Ms. Murdock because of her gender becomes apparent.

72.    During her interview, Mr. Seeton impermissibly asks Ms. Murdock about her marital status, her family, and similar inappropriate topics.

73.    After hiring Ms. Murdock and discovering the depth of knowledge she has regarding pricing, growth strategies, and methods for serving customers and growing the Teton County operation, Mr. Seeton's discriminatory behavior worsens.

74.    Rather than working with Ms. Murdock and making use of her knowledge and experience, Mr. Seeton consistently tries to minimize her abilities and knowledge, and treats her in a disrespectful and inappropriate manner, because she is a woman.

75.     When Ms. Murdock attempts to work with her coworkers and share information with them, Mr. Seeton becomes critical and hostile, telling Ms. Murdock that she should not be helping her coworkers.

76.     Despite Mr. Seeton's efforts to the contrary, Ms. Murdock's coworkers become aware of the resources and knowledge she has to offer and seek her out for help.  Mr. Seeton notices this and becomes even more angry and hostile towards Ms. Murdock.

77.     Mr. Seeton discriminates against, and isolates, Ms. Murdock to the detriment of the functioning of his agency, undermining Ms. Murdock's ability to work at maximum effectiveness, negatively targeting her relationships with coworkers, and refusing to return her phone calls or work with her himself.

78.     Mr. Seeton additionally attempts to push difficult customers onto Ms. Murdock, and in doing so violates her privacy.  Contrary to Ms. Murdock's wishes, Mr. Seeton gives her personal and private cell phone number to a frustrated customer in an attempt to further undermine her success, thereby exacerbating her already hostile working conditions.

79.     Ms. Murdock continues working and expresses concerns about serious errors made by an Agency Manager in the Lander office.  Rather than being grateful for the alert, Mr. Seeton aggressively attacks Ms. Murdock, amplifying the hostile work environment by yelling, "You're not agency manager!!  Let me handle it."

80.     Mr. Seeton additionally makes false claims about Ms. Murdock based on her gender, representing to her peers and coworkers that a personality test had revealed that she "can't be managed."

81.     On numerous occasions, Mr. Seeton excludes Ms. Murdock from important networking and professional opportunities because she is a woman.

82.     On one occasion, Mr. Seeton arranges a duck-hunting outing for Farm Bureau agents, intentionally excluding Ms. Murdock, and appearing to exclude other female agents as well.  On other occasions, he excludes her, and appears to exclude other female agents, from snowmobiling trips to which he invites male Farm Bureau agents.

83.     Mr. Seeton excludes Ms. Murdock from social dinners and other networking functions, neglecting to inform her of these events and intentionally isolating her.

84.     Mr. Seeton's discrimination against Ms. Murdock grows to the point that he directly interferes in and sabotages her professional life.  As a testament to Ms. Murdock's abilities, she was named Rookie of the Year while working at Farm Bureau.  The following year, she was nominated and in the running for Agent of the Year.  Upon information and belief, Mr. Seeton worked to prevent Ms. Murdock from receiving the award, sabotaging her and working to ensure that the award was given to a male representative from Casper.

85.     Ms. Murdock wants help in addressing the harassment and discrimination that was being directed against her.  However, Farm Bureau has not and continues not to offer any help.  Farm Bureau does not have a reporting mechanism or channel for her to obtain help and did not protect Ms. Murdock from retaliation previously.  Given Ms. Murdock's past experiences attempting to report, she is forced to endure the harassment and discrimination during and even following her time at Farm Bureau.

86.     On October 4, 2019, Mr. Seeton terminates Ms. Murdock.  Mr. Seeton informs Ms. Murdock that she is being terminated for forming a business.  However, Ms. Murdock's formation of the business was approved by Farm Bureau.  Mr. Seeton then sought to justify his termination of Ms. Murdock by claiming her business associate had appointments with other companies.  Again, Mr. Seeton's justification fell flat since Farm Bureau had been aware of the

appointments since 2015.  Upon information and belief, Mr. Seeton fired Ms. Murdock because she is a woman, and his discrimination against her did not stop at termination.

87.     First, Mr. Seeton, who affords male agents reasonable notice and two months to transition out of office when terminated, insists that Ms. Murdock leave the same day he terminates her.

88.     Second, Mr. Seeton immediately changes the locks on the building and, upon information and belief, waits at the office until a locksmith was able to arrive and change the locks.  Mr. Seeton had never before required the locks to be changed after the termination or resignation of a male agent.

89.     Third, Mr. Seeton circulates Ms. Murdock's compensation and sales information to other Farm Bureau agents and employees without her permission.

90.     Fourth, Mr. Seeton informs Ms. Murdock that she is not entitled to all of her deferred compensation, despite having given other male agents who were terminated all of their deferred compensation benefits.  Further, Mr. Seeton refuses to tell Ms. Murdock who she can contact at the Laramie home office regarding her deferred compensation.

91.     Mr. Seeton, joined by others, continues to harass and defame Ms. Murdock after her termination.

92.     On or about November 14, Ms. Murdock contacted the Teton County Farm Bureau and requested permission for either herself or her husband to come to the office to retrieve an additional item of personal property that she had left after her abrupt termination. When Ms. Murdock contacted the office regarding retrieval of the item, an agent told Ms. Murdock that she had been given strict orders that Mr. Seeton must be present if Ms. Murdock was to come by the office to retrieve personal items.

93.     On or about November 14 and 15, 2019, Mr. Seeton makes false statements to a former employee, Farm Bureau colleagues, and possibly others, that Ms. Murdock had been "operating a whole other [insurance] company and that's why [Todd] had to terminate her" and that Ms. Murdock was involved in "illegal activity" in the insurance or securities business.  Mr. Seeton also implied that Ms. Murdock's husband might be involved.

94.     The combination of changing the locks after Ms. Murdock's termination, the refusal to allow her to retrieve anything from the office without the Agency Manager present, and the false statement about her activities in the insurance and securities industries collectively paint a disparaging, damaging, and deliberately false picture of Ms. Murdock.

95.     Mr. Seeton's behavior and directions demonstrate that Mr. Seeton is making disparaging and defamatory statements regarding Ms. Murdock, and is doing so deliberately and maliciously, in order to harm Ms. Murdock and her future business and business employability and income.

96.     Ms. Murdock has been harassed, assaulted, and discriminated against by multiple representatives of Farm Bureau at nearly every stage of her professional relationship with them. The consistent harassing and discriminatory behavior to which Ms. Murdock was subjected created a pervasively hostile work environment.  Farm Bureau's treatment of Ms. Murdock and its handling of her attempted reports demonstrate that the company has little regard for its responsibility to treat all its employees and agents equally and no respect for Ms. Murdock's rights.

97.     Farm Bureau employees, agents, and representatives have, and continue to, falsely and improperly defame, disparage, and denigrate Ms. Murdock.

98.     Plaintiffs filed a *Complaint* and a *Jury Demand* in In the District Court of Teton County, Wyoming, Ninth Judicial District, on October 2, 2020.

99.     Some Defendants filed Motions to Dismiss, resulting in certain defendants being dismissed by the Honorable Timothy Day.

100.    On March 4, 2021, Plaintiffs filed a *Motion to Amend Complaint*.  Plaintiffs file this First Amended Complaint which contains their federal claims and jurisdiction over said claims is proper in this Court as noted above.

101.    This *First Amended Complaint and Jury Demand* is the First Amended Complaint proposed in Teton County District Court, with the addition of one addition claim for Intentional Infliction of Emotional Distress, and incorporating Judge Day's orders for dismissal of certain parties.

## STATEMENT OF CLAIMS

## FIRST CLAIM FOR RELIEF –TITLE VII SEVERE AND PERVASIVE SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT – 42 U.S.C. § 2000(e)-2(a)

102.    The allegations contained in the foregoing paragraphs are incorporated herein by reference.

103.    Since Ms. Murdock was hired by Defendants, beginning in 2007, Defendants have, at various times, engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000(e)-2(a), and in violation of the Wyoming Fair Employment Practices Wyo. Stat. § 27-9-191, et. seq.. by engaging in severe and pervasive sexual harassment and creating an abusive work environment.

104.    Ms. Murdock belongs to a protected category under Title VII.

105.    Defendants subjected Ms. Murdock to unwelcome conduct including severe and pervasive sexual harassment and an abusive working environment.

106.    The conduct that Defendants directed at Ms. Murdock was based on Ms. Murdock's protected category.

107.    Ms. Murdock subjectively viewed the harassment as creating an abusive work environment and a "reasonable" person would also objectively view the work environment as abusive.

108.    The effects of the Defendants, practices described above, have been to deprive Ms. Murdock of equal employment opportunities and otherwise adversely affected her employment status because of her sex, female.

109.    The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Ms. Murdock.

110.    As a direct and proximate result of Defendants' actions and inactions, Ms. Murdock has suffered, and will continue to suffer, pain and suffering, and extreme and severe mental anguish and emotional distress, and she has suffered, and will continue to suffer, a loss of earnings and other employment benefits and job opportunities.  Ms. Murdock is thereby entitled to general and compensatory damages in amounts to be proven at trial.

111.    As a further direct and proximate result of the Defendants' violation of her rights to due process, Ms. Murdock has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendants and has thereby incurred, and will continue to incur, legal fees and costs.  Plaintiffs request that attorneys' fees be awarded pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF – TITLE VII COMPENSATION DISCRIMINATION – 42 U.S.C. § 2000(e)-2(a) AND VIOLATION OF THE EQUAL PAY ACT – 29 U.S.C. §§ 206(d)(1) & 215(a)(2)**

112.    The allegations contained in the foregoing paragraphs are incorporated herein by this reference.

113.    Since Ms. Murdock was hired by Defendants in 2007, Defendants have engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000(e)-2(a),Wyo. Stat. § 27-9-105ou by discriminating against female agents with respect to compensation.

114.    Ms. Murdock occupied the same position as other, male, agents, who received compensation that Ms. Murdock was denied because she is female.

115.    The effects of the practices described above have been to deprive Ms. Murdock of equal employment opportunities and otherwise adversely affect her employment status because of her sex, female.

116.    The unlawful employment practices complained of above were intentional.

117.    The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Ms. Murdock.

118.    As a direct and proximate result of Defendants' actions and inactions, Ms. Murdock has suffered, and will continue to suffer, pain and suffering and extreme and severe mental anguish and emotional distress; Ms. Murdock has suffered, and will continue to suffer, a loss of earnings and other employment benefits and job opportunities.  Ms. Murdock is thereby entitled to general and compensatory damages in amounts to be proven at trial.

119.    As a further direct and proximate result of the Defendants' violation of her rights to due process, Ms. Murdock has been compelled to retain the services of counsel in an effort to

enforce the terms and conditions of the employment relationship with Defendants and has thereby incurred, and will continue to incur, legal fees and costs.  Plaintiffs request that attorneys' fees be awarded pursuant to 42 U.S.C. § 1988.

## THIRD CLAIM FOR RELIEF – RETALIATION AND/OR CONSTRUCTIVE DISCHARGE BECAUSE OF SEX – 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e-3(a)

120.    The allegations contained in the foregoing paragraphs are incorporated herein by reference.

121.    In Ms. Murdock's case, beginning in 2007, Defendants engaged in unlawful employment practices, in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a) and Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by retaliating against and constructively discharging Ms. Murdock because of her sex on multiple occasions.

122.    By asking her supervisors and manger for help and by asking them to address and stop the hostile work environment and sexual harassment, Ms. Murdock engaged in protected activity and opposition to discrimination.

123.    After Ms. Murdock would report the abusive and hostile work environment and ask for help, the hostile work environment and harassment would continue and become worse. Defendants, through their representatives and otherwise, would take materially adverse action towards Ms. Murdock by making the work environment increasingly hostile and abusive.

124.    There is a causal connection between Ms. Murdock's protected activity and opposition to the discrimination and the materially adverse action and escalating hostile work environment and harassment.

125.    The harassing and abusive actions by Defendants continued to escalate.  In response to Ms. Murdock's reports, the hostile environment and sexual harassment worsened.

126.    At the times she was forced out of her jobs, Ms. Murdock was performing her work in a more than satisfactory manner.

127.    Because Defendants failed to respond to employee reports of discrimination based on sex, hostile work environment, harassment, and other conditions of employment, the working conditions became increasingly intolerable.

128.    The retaliation and work conditions to which Ms. Murdock was submitted were sufficiently intolerable that a reasonable employee would have experienced them as retaliation.

129.    The unlawful employment practices described above were intentional.

130.    The unlawful employment practices of Defendants complained of herein were done with malice or with reckless indifference to the federally protected rights of Ms. Murdock.

131.    As a direct and proximate result of Defendants' actions and inactions, Ms. Murdock has suffered, and will continue to suffer, pain and suffering and extreme and severe mental anguish and emotional distress; Ms. Murdock has suffered, and will continue to suffer, a loss of earnings and other employment benefits and job opportunities.  Ms. Murdock is thereby entitled to general and compensatory damages in amounts to be proven at trial.

132.    As a further direct and proximate result of the Defendants' violation of her rights to due process, Ms. Murdock has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendants and has thereby incurred, and will continue to incur, legal fees and costs.  Plaintiffs request that attorneys' fees be awarded pursuant to 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF:  DEFAMATION

133.    Plaintiffs incorporate herein the allegations contained in the foregoing paragraphs of this *First Amended Complaint* by reference as if set forth fully herein.

134.   Upon information and belief, Defendants have engaged in spreading false and misleading information to third-parties about Ms. Murdock's involvement in improper and/or illegal criminal activity.

135.   Upon information and belief, Defendants, specifically Mr. Todd Seeton, though possibly others as well, have made numerous false, defamatory, and disparaging statements regarding Ms. Murdock.

136.   Upon information and belief, Mr. Seeton falsely told Farm Bureau colleagues and employees that Ms. Murdock had "been operating a whole other [insurance] company and that's why [Todd] had to terminate her."

137.   Such statements are demonstrably false—one can easily verify with the Department of Insurance that Ms. Murdock did not activate or use an appointment with any other insurance company or insurance business before her termination on October 4, 2019—and Mr. Seeton knows that they are false.

138.   Upon information and belief, Defendants have continued to make similar statements about Ms. Murdock and have even intimated that Ms. Murdock's husband might be involved as well.

139.   Upon information and belief, Defendants made such statements to third parties and to Farm Bureau agents, representatives, and employees.

140.   Upon information and belief, Defendants were making such statements for the purpose of disrupting and compromising Ms. Murdock's and her family's future business, employability, and income.

141.   Upon information and belief, the statements were false, defamatory, and not subject to any privilege.

142.   Defendants spread the statements with the requisite degree of fault.

143.   Defendants' spread of these statements resulted in damage to Plaintiff.

144.   As a direct and proximate result of Defendants' behavior, Ms. Murdock has suffered and will continue to suffer pain, misery, extreme and severe mental anguish, and emotional distress; and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.  Ms. Murdock is thereby entitled to general and compensatory damages in amounts to be proven at trial.

## FIFTH CLAIM FOR RELIEF: DECLARATORY RELIEF

145.   Plaintiffs reallege and incorporate herein by this reference all of the paragraphs of this *First Amended Complaint* as if set forth fully herein.

146.   The Declaratory Judgment Act provides that "[c]ourts of record within their respective jurisdictions may declare rights, status and other legal regulations whether or not further relief is or could be claimed."  WYO. STAT. ANN. § 1-37-102.  It further provides that any party interested under a contract "may have any question of construction or validity arising under the instrument determined and obtain a declaration of rights, status or other legal relations." WYO. STAT. ANN. § 1-37-103

147.   On August 19, 2014, Ms. Murdock signed the Agent's Agreement between herself and MWFB.  The Agreement included a noncompete provision that Defendants now seek to enforce.

148.   However, the MWFB noncompete provision is overbroad under Wyoming law and as such Plaintiffs seek a declaratory judgment that the non-compete is invalid.

149.    In addition, Ms. Murdock signed a Farm Bureau Life Insurance Company (FBL) Agent Contract on September 8, 2014, which contains a noncompete clause, termed "non-solicitation" in a form similar to the noncompete provision in the MWFB contract.

150.    In the wake of her abrupt and wrongful termination, and in order to support her family, Ms. Murdock may choose to offer insurance products competing with FBL in the course of her future business activities and necessarily needs declaratory relief to ensure FBL does not seek to enforce the same.

151.    Plaintiff Murdock believes the non-compete clause to be invalid and unenforceable and seeks declaratory relief to that end.

152.    The Agreement is in writing.

153.    Ms. Murdock had an employment contract with MWFB.  Although Ms. Murdock's "Agent's Agreement, Section II, states "Agent is an independent contractor and not an employee of Mountain West," there are other factors that clearly indicate Ms. Murdock was an employee of MWFB.

154.    The Agreement, Section IV.2, states "Agent agrees to these limitations in consideration for his/her initial or continued appointment as an Agent for Mountain West." MWFB neither offered nor provided Ms. Murdock with separate consideration.

155.    Wyoming Courts have frowned on initial or continued employment as a form of consideration necessary to meet the standard required for separate consideration.

156.    The Agreement, Section IV.2, identifies the non-competition duration to be eighteen (18) months and the geographic area to be "the county of Agent's principle place of business or any counties which border the county of Agent's principle place of business."

157.    A durational limitation should be reasonably related to the legitimate interest which the employer is seeking to protect. Defendants' eighteen (18) month non-compete duration is excessive and, therefore, unenforceable.

158.    The extensive area identified in the Agent's Agreement effectively requires Ms. Murdock to conduct any future insurance or securities business in another state or two counties over in Wyoming, making it impossible for her to stay in Teton County, her home county. This provision of the noncompete clause is an onerous restraint on Plaintiff's ability to earn a living. Ms. Murdock has a family, and children in Teton County schools, and imposition of MWFB's geographic restraints would be an undue hardship on Ms. Murdock.

159.    Geographic restraints must be a proven necessity by MWFB and the need for the geographic restraint must outweigh the impact on the employee. Given that Ms. Murdock would not be competing with Farm Bureau agents with the same products, there is no upper hand Ms. Murdock is given that must be restrained.

160.    Further, Ms. Murdock has not misused nor would she misuse trade secrets, if she has any; MWFB has its set of products that can only be obtained from a MWFB Agent. In the future, Ms. Murdock would not be a MWFB agent and, therefore, would not be able to offer any products connected to MWFB (and its alleged trade secrets). Ms. Murdock would also not have special influence over MWFB customers. As a separated agent, Ms. Murdock would offer competing products and would not be competing with other MWFB agents to sell the same products to the same customers.

161.    With its noncompete clause, MWFB is attempting to both limit competition in the insurance market and narrow the choices available to people seeking insurance in the Teton County area, which should not be endorsed.

162.   A dispute exists between the parties as to whether the non-compete provision of their Agreement is valid and enforceable.

163.   Plaintiff Murdock therefore seeks a declaratory judgment that the non-compete provision in her Agreement with MWFB is invalid and unenforceable.  Or, in the alternative, Ms. Murdock seeks a declaratory judgment that the non-compete provision is invalid in its duration and geographical area, which impose excessive constraints on Ms. Murdock.

164.   Alternatively, MWFB claims that Ms. Murdock's relationship with MWFB was that of an independent contractor.  If the Court found this to be the case, then MWFB does not have sufficient legal basis to enforce a non-compete clause that could not be a legitimate part of Ms. Murdock's Agreement with MWFB.

165.   If Ms. Murdock is found to be an independent contractor, then she would not be considered an employee and, therefore, would not have an employment contract in the sense required to enable enforcement of a noncompete provision, as well as failing on the other points described above.

166.   For these reasons, Plaintiffs hereby requests that the Court enter a declaratory judgment in her favor finding that the MWFB noncompete provision is overbroad under Wyoming law and as such the non-compete is invalid.

## SIXTH CLAIM FOR RELIEF: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

167.   Plaintiffs reallege and incorporate herein by this reference all of the paragraphs of this *First Amended Complaint* as if set forth fully herein.

168.   Farm Bureau Defendants have several different agreements with Ms. Murdock:  an Agent's Agreement, a County Office Agreement, and a Farm Bureau Life Insurance Company Agent Contract.  Negotiations between the parties took place in person and via telephone calls,

letters and electronic mail.  These agreements were executed at various times during the latter half of 2014, when Ms. Murdock started her position as an agent in the MWFB Teton County office.

169.   The Agreements between Ms. Murdock and Defendants imposed on Defendants a duty of good faith and fair dealing in their performance of the obligations contained in and inherent in the Agreements.  These duties included, but were not limited to, refraining from committing any act that would injure the rights of Ms. Murdock to receive the benefit of the bargained for exchange represented by the Agreements and to otherwise avoid breaching community standards of decency, fairness, and reasonableness.

170.   Defendants have breached their duty of good faith and fair dealing.  These breaches include, but are not limited to, Defendants' failure to treat Ms. Murdock equally, their refusal to address Ms. Murdock's concerns in a fair manner, their attempts to enforce an invalid non-compete clause, and the false and misleading claims Defendants have been making about Ms. Murdock and her family to third parties.

171.   The conduct of Defendants was tortious, requiring an award of compensatory and consequential damages, and sufficiently willful, without cause, and malicious so as to warrant imposition of punitive damages.

172.   As a direct and proximate result of the conduct of Defendants in breaching their duties of good faith and fair dealing, Plaintiff Murdock has been damaged in an amount to be determined at trial.

173.   As a direct and proximate result of Defendants' behavior, Ms. Murdock has suffered and will continue to suffer pain, misery, extreme and severe mental anguish, and emotional distress; and she has suffered and will continue to suffer a loss of earnings and other

employment benefits and job opportunities.  Ms. Murdock is thereby entitled to general,

compensatory, and consequential damages in amounts to be proven at trial.

## SEVENTH CLAIM FOR RELIEF:  INTENTIONAL TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS AND POTENTIAL ECONOMIC RELATIONS

174.  Plaintiffs reallege and incorporate herein by this reference all of the paragraphs of

this *First Amended Complaint* as if set forth fully herein.

175.  Plaintiffs hereby state and allege that Defendants intentionally interfered with their

economic relations.

176.  Upon information and belief, Defendants intentionally interfered with existing and

potential economic relationships that Plaintiffs had with their established and potential customers

employees, peers, and other third-parties.

177.  In addition, Defendants interfered with Plaintiffs' economic relations by improper

means.

178.  Upon information and belief, Defendants have engaged in spreading false and

misleading information to third-parties about Plaintiff Ms. Murdock's involvement in supposed

inappropriate and possibly illegal activity.

179.  Upon information and belief, Defendants, specifically Mr. Todd Seeton, though

possibly others as well, have made numerous false, defamatory, and disparaging statements

regarding Ms. Murdock.

180.  Upon information and belief, Mr. Seeton falsely told Farm Bureau colleagues and

employees that Ms. Murdock had "been operating a whole other [insurance] company and that's

why [Todd] had to terminate her."

181.  Such statements are demonstrably false—one can easily verify with the

Department of Insurance that Ms. Murdock did not activate or use an appointment with any other

insurance company or insurance business before her termination on October 4, 2019—and Mr. Seeton knows that they are false.

182. Upon information and belief, Defendants have continued to make similar statements about Ms. Murdock, including that Ms. Murdock was involved in "illegal activity" in the insurance or securities business. Upon information and belief, Defendants also stated or claimed that Ms. Murdock's husband was involved as well.

183. Upon information and belief, Defendants made such statements to third parties and to Farm Bureau agents, representatives, and employees.

184. Upon information and belief, Defendants were making such statements for the purpose of disrupting and compromising Plaintiffs' future business, employability, and income, as well as Ms. Murdock's family's future business, employability, and income.

185. The statements were false, defamatory, and not subject to any privilege.

186. Defendants spread the statements with the requisite degree of fault.

187. Defendants' spread of these statements resulted in damage to Plaintiff.

188. Upon information and belief, Defendants were making such statements for the purpose of redirecting and disrupting Plaintiff's business.

189. Upon information and belief, Defendants engaged in a purposeful campaign to interfere with and disrupt Plaintiff's business and employee relationships and Plaintiff's future business prospects and employee relationships.

190. Further, Defendants' interference and statements caused harm to Plaintiff.

191. Plaintiffs were damaged by Defendants' misconduct in an amount greater than and beyond their general and compensatory damages in an amount to be proven at trial.

192.    The conduct of Defendants was willful and wanton, justifying the award of punitive damages.

## EIGHTH CLAIM FOR RELIEF:  FALSE LIGHT INVASION OF PRIVACY

193.    Plaintiffs incorporate herein the allegations contained in the foregoing paragraphs of this *First Amended Complaint* by reference as if set forth fully herein.

194.    Defendants, individually and on behalf of the Farm Bureau Defendants, made statements of fact regarding Plaintiff Murdock that placed her in a defamatory, false light.

195.    Upon Ms. Murdock's termination and abrupt dismissal from the office on October 4, 2019, Mr. Seeton proceeded to have the locks on the office doors changed, implying that Ms. Murdock was not a trustworthy and honest person.

196.    On or about November 14, 2019, Ms. Murdock contacted the Teton County Farm Bureau and requested permission for either herself or her husband to come to the office to retrieve an additional item of personal property that she had left after her abrupt termination.  Bly When Ms. Murdock contacted the office regarding retrieval of the item, an agent told Ms. Murdock that she had been given strict orders that Mr. Seeton must be present if Ms. Murdock was to come by the office to retrieve personal items.

197.    Upon information and belief, Mr. Seeton falsely told Farm Bureau colleagues and employees that Ms. Murdock had "been operating a whole other [insurance] company and that's why [Todd] had to terminate her."

198.    Such statements are demonstrably false—one can easily verify with the Department of Insurance that Ms. Murdock did not activate or use an appointment with any other insurance company or insurance business before her termination on October 4, 2019—and Mr. Seeton knows that they are false.

199.   Upon information and belief, Defendants have continued to make similar statements about Ms. Murdock, including that Ms. Murdock was involved in "illegal activity" in the insurance or securities business.  Upon information and belief, Defendants also stated or implied that Ms. Murdock's husband was involved as well.

200.   Upon information and belief, Defendants made such statements to third parties and to Farm Bureau agents, representatives, and employees.

201.   Defendants placed Plaintiff Murdock before the public and third-parties in a false light by making untrue and inaccurate statements regarding the circumstances under which Ms. Murdock was terminated and by behaving as though Ms. Murdock were a criminal.

202.   The combination of changing the locks after Ms. Murdock's termination, the refusal to allow her to retrieve anything from the office without the Agency Manager present, and the false statement about her activities in the insurance and securities industries collectively paint a disparaging, damaging, and deliberately false picture of Ms. Murdock.

203.   Defendants made disparaging and damaging statements regarding Ms. Murdock as set forth above that would be highly offensive to a reasonable person.

204.   Defendants, individually and on behalf of the Defendants, had knowledge or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Plaintiff Murdock would be placed.

205.   Defendants, individually and on behalf of the Defendants, subjected Plaintiff Murdock to uninvited notoriety grounded in falsehoods caused by the Defendants.

206.   As a direct and proximate result of Defendants' behavior, Ms. Murdock has suffered and will continue to suffer pain, misery, extreme and severe mental anguish, and emotional distress; and she has suffered and will continue to suffer a loss of earnings and other

employment benefits and job opportunities.  Ms. Murdock is thereby entitled to general and compensatory damages in amounts to be proven at trial.

## NINTH CLAIM FOR RELIEF:  NEGLIGENT MISREPRESENTATION

207.    Plaintiffs incorporate herein the allegations contained in the foregoing paragraphs of this First Amended Complaint by reference as if set forth fully herein.

208.    The Farm Bureau Defendants made numerous representations to Plaintiffs, including, but not limited to, representations that they were operating legal entities within the state of Wyoming.

209.    Among other representations, the Defendants represented that Teton County Farm Bureau was a nonprofit corporation recognized as exempt from U.S. federal income tax under Section 501(c)(5) of the Internal Revenue Code, which is not true.

210.    Among other representations, the Defendants represented that Teton County Farm Bureau was a lawfully operating entity within the state of Wyoming, which was not true.

211.    The Farm Bureau Defendants failed to use reasonable care to determine whether the representations were true.  The Farm Bureau Defendants engaged in these and other negligent misrepresentations in order to obtain as much work and contributions from Plaintiff, while knowing that Plaintiff's work and contributions were not going to legal, nonprofit entities, as Defendants had falsely represented.

212.    The Farm Bureau Defendants were in a better position than Plaintiffs to know the true facts of their representations, including, but not limited to, whether or not they were legally formed and operating entities with the IRS and with the state of Wyoming.

213.    The Farm Bureau Defendants had a financial interest in the work and contributions of Plaintiffs.

214.    Plaintiffs relied on the representations of the Farm Bureau Defendants and it was reasonable for Plaintiffs to do so.  The Farm Bureau Defendants have county farm bureaus established throughout multiple states, including Wyoming.  Other county farm bureau entities, upon information and belief, are legally established entities with the state of Wyoming and are legally established nonprofit organizations with the IRS.

215.    Plaintiffs suffered damage as a result of relying on the Defendants' representations.

216.    Plaintiffs were damaged by Defendants' misconduct in an amount greater than and beyond their general and compensatory damages to be proven at trial.

217.    The conduct of Defendants was willful and wanton, justifying the award of punitive damages.

## TENTH CLAIM FOR RELIEF:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

218.    Plaintiffs incorporate herein the allegations contained in the foregoing paragraphs of this *First Amended Complaint* by reference as if set forth fully herein.

219.    As set forth in the above Paragraphs herein, Defendants' conduct was extreme and outrageous.

220.    The actions and conduct of Defendants and their agents, employees and representatives intentionally or recklessly caused Plaintiff Ms. Murdock to suffer severe emotional distress and harm.

221.    As a result of the actions and conduct of Defendants and their agents, employees and representatives, Plaintiff Ms. Murdock suffered severe emotional distress.

222.    Specifically, as a result of the hostile work environment, discrimination, sexual harassment, abuse and outrageous conduct by Defendants and their agents, employees and

representatives, Plaintiff Ms. Murdock experienced suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, shame and the like.

223.   Plaintiff Ms. Murdock's emotional distress was severe.  It was not mild or brief. She experienced distress so substantial and lasting that no reasonable person should be expected to bear it.

224.    Several factors demonstrate that the conduct and actions of Defendants towards Plaintiff Ms. Murdock were outrageous.

225.   Defendants, and those acting as their agents and representatives, had greater power at the workplace than Plaintiff Murdock did.  By creating and enabling an abusive, hostile and outrageous workplace, Defendants and their agents and representatives abused their power over Plaintiff Murdock.  Their power over Ms. Murdock enhanced their ability to do harm to Ms. Murdock.

226.   The unwelcome touching and offensive conduct to Ms. Murdock by Defendants and their representatives and agents was non-negligible physical contact.

227.   Defendants' conduct was further made outrageous by their retaliation towards her for opposing and reporting the sexual advances and hostile work environment.

228.   Given that Ms. Murdock was the first female regional manager, Defendants' representatives knew that singling her out for such abuse and discrimination would make her more susceptible to emotional distress.  Despite this knowledge, Defendants and their representatives and agents targeted Ms. Murdock anyway.

229.   As set forth above herein, Plaintiff Ms. Murdock was subjected to repeated incidents and a pattern of harassment and abuse that went on for years.

230.    As a direct and proximate result of Defendants' behavior and failure to act, Ms. Murdock has suffered and will continue to suffer pain, misery, extreme and severe mental anguish, and emotional distress; and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.  Ms. Murdock is thereby entitled to general and compensatory damages in amounts to be proven at trial.  Ms. Murdock is also entitled to punitive damages in amounts to be proven at trial

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs Mia Murdock and M3 Inc. pray to this Court for the following:**

A.      On Plaintiffs' claim for Defamation and False Light Invasion of Privacy, for a judgment against Defendants finding that Defendants knowingly made a false statement(s) of fact or facts that caused harm to Plaintiffs, and Plaintiffs were damaged by Defendants' misconduct in an amount greater than and beyond their general, compensatory, and consequential damages to be proven at trial, as well as punitive damages in an amount sufficient to punish Defendants and to deter future conduct like that exhibited by Defendants, such that other persons will be deterred from such conduct as well as the Defendants; and,

B.      On Plaintiffs' claim for Declaratory Relief, for a judgment against Defendants finding that the non-compete clause of the Agent's Agreement between Ms. Murdock and MWFB is invalid and unenforceable; and,

C.      On Plaintiffs' claim for Breach of the Covenant of Good Faith and Fair Dealing, for a judgment against Defendants finding that Defendants breached their duties of good faith and fair dealing and that Plaintiffs were damaged by Defendants' misconduct, requiring an award

of general, compensatory and consequential damages, as well as punitive damages to deter future conduct, in an amount to be determined at trial; and

D.      On Plaintiffs' claim for Intentional Tortious Interference with Economic and Potential Economic Relations against Defendants, for a judgment against the Farm Bureau Defendants and in favor of Plaintiffs finding that Plaintiffs were damaged by Defendants' misconduct in an amount greater than and beyond their general and compensatory damages to be proven at trial, as well as punitive damages in an amount sufficient to punish the Farm Bureau Defendants and to deter future conduct like that exhibited by Defendants, such that other persons will be deterred from such conduct as well as the Defendants; and

E.      On Plaintiffs' claim for Negligent Misrepresentation, for findings and judgment that the Farm Bureau Defendants made negligent misrepresentations to Plaintiffs, and Plaintiffs were damaged by Defendants' misconduct in an amount greater than and beyond their general and compensatory damages to be proven at trial, as well as punitive damages in an amount sufficient to punish Defendants and to deter future conduct like that exhibited by Defendants, such that other persons will be deterred from such conduct as well as the Defendants; and

F.      On Plaintiffs' claim for Intentional Infliction of Emotional Distress, for findings and judgment that the Defendants inflicted severe suffering, pain, misery, extreme and severe mental anguish, and emotional distress; and Defendants have caused Plaintiffs to suffer and will continue to suffer a loss of earnings and other employment benefits and job opportunities; that Plaintiffs  were damaged by Defendants' misconduct in an amount greater than and beyond their general and compensatory damages to be proven at trial, as well as punitive damages in an amount sufficient to punish Defendants and to deter future conduct like that exhibited by

Defendants, such that other persons will be deterred from such conduct as well as the

Defendants; and

G.      On all of Plaintiffs' causes of action, for their costs and attorney's fees incurred

herein, the amount of which is to be determined at trial; and,

H.      Punitive damages in an amount sufficient to punish Defendants and to deter future

conduct like that exhibited by Defendants, such that other persons will be deterred from such

conduct as well as the Defendants; and

I.      Such other and further relief as the Court deems just and proper under the

circumstances.

## **JURY DEMAND**

Plaintiff, by and through her counsel, pursuant to Federal Rule of Civil Procedure 38,

hereby requests that this matter be tried to a jury of six.

RESPECTFULLY SUBMITTED this 2nd day of May, 2021.

THE RICHARD LAW FIRM, P.C.

_____

Andrea L. Richard (5-2848)
THE RICHARD LAW FIRM, P.C.
P.O. Box 1245
290 E. Broadway
Jackson, Wyoming 83001
Office: 307.732.6680
Fax: 307.200.4280
andrea@arichardlaw.com

*Attorney for Plaintiffs*